# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| SAMANTHA MENDOZA RUIZ and KAREN FERNANDEZ, | |
| Plaintiffs, | Case No. 24-CV-645-JPS |
| v. | |
| CORPORATE GRAPHICS COMMERCIAL, INC., | **ORDER** |
| Defendant. | |

## 1.    INTRODUCTION

In this action, Plaintiffs Samantha Mendoza Ruiz ("Mendoza") and Karen Fernandez ("Fernandez") (together, "Plaintiffs") sue Defendant Corporate Graphics Commercial, Inc. ("Defendant"). ECF No. 1. Both Plaintiffs sue for race discrimination, and Mendoza sues for sexual harassment, constructive discharge, and retaliation. *See generally id.*

Now before the Court is Defendant's motion for summary judgment, ECF No. 21, which is fully briefed, ECF Nos. 22, 26, 27. For the reasons discussed herein, the Court will grant the motion with respect to all of Plaintiffs' claims and dismiss this case with prejudice. The Court will further deny as moot Plaintiffs' motion to strike. ECF No. 28.

## 2. FACTUAL BACKGROUND[1]

### 2.1 Plaintiffs' Roles at Defendant Company

Defendant is a print and bookmaking company. ECF No. 23 at 1. Mendoza, a Hispanic woman of Mexican descent, was assigned by Pro-Labor Management Services, LLC ("PLM"), a staffing company, to work at one of Defendant's factories in or around July 2021. *Id.* at 1, 2, 5. Fernandez, a Hispanic woman of Salvadorian descent, was assigned by PLM to work at the same factory in or around November 2021. *Id.* at 15. Mendoza terminated her employment on August 16, 2022, and Fernandez terminated her employment on September 2, 2022. *Id.* at 2. Throughout the entirety of their respective employments at Defendant company, Plaintiffs worked as machine operator assistants, supporting machine operators on equipment. *Id.* at 5, 15. Plaintiffs allege that they were employees of Defendant at relevant times and, for purposes of the instant motion for summary judgment, Defendant does not contest this allegation. *Id.* at 1.

### 2.2 Defendant's Employment Policies

During the time of Plaintiffs' respective employments, Defendant maintained written policies for employees in its Employee Handbook. *Id.* at 4. Such policies included a prohibition on discrimination and harassment based on sex, race, or other prohibited factors, as well as a harassment policy providing that (a) if a person believes that a violation of the policy has occurred, such person should immediately report the alleged harassment and (b) any person who reports an instance of alleged

---

[1]The following recitation of facts is drawn from the parties' agreed upon statement of facts, ECF No. 23, with irrelevant facts omitted and other minor, non-substantive edits. Citations to the agreed upon statement of facts are generally omitted from the later analysis portion of this Order, except where additional factual detail is provided.

harassment in good faith will not be subject to retaliation for doing so. *Id*. Defendant provided mandatory annual training on sexual harassment, discrimination, and related company policies to its employees; however, it did not provide such training to temporary employees. *Id*. Nonetheless, one of the factory's managers testified—and Plaintiffs do not dispute—that the sexual harassment policy did apply to temporary workers in Defendant's factory. *Id*.

Furthermore, PLM, the staffing agency responsible for Plaintiffs' placement at the Defendant company, maintained policies and procedures for its employees in its Code of Conduct. *Id*. The Code of Conduct stated that harassment is not tolerated and should be reported immediately. *Id*.[2]

### 2.3 Mendoza's Race Discrimination and Sexual Harassment, Constructive Discharge, and Retaliation Allegations

In or around March 2022, Mendoza was assigned to work on a machine that was also staffed by a machine operator named Greg Nelson ("Nelson"). *Id*. at 5. Nelson, a Caucasian male, was a full-time machine operator employed by Defendant at the factory. *Id*. Nelson was not a

---

[2]In their motion to strike, ECF No. 28, Plaintiffs object to Defendant's argument that PLM's harassment-related training rendered unnecessary any harassment-related training by Defendant. Because the Court does not rely on the existence or lack thereof of formal harassment training by Defendant in reaching its decision to grant summary judgment, *see infra* Section 4, the motion to strike will be denied as moot. *See, e.g., Ludwig v. United States*, 512 F. Supp. 3d 874, 877–78 (N.D. Ill. 2021), *aff'd*, 21 F.4th 929 (7th Cir. 2021) ("Because the court's summary judgment ruling does not rely on that exception, Dana's motion to strike Kattell's declaration is denied as moot."); *Prochaska v. Menard, Inc.*, 829 F. Supp. 2d 710, 712 (W.D. Wis. 2011) ("I am denying the motions related to Ray as moot because I did not need to rely on any of his testimony in deciding the motion for summary judgment."); *McCombs v. Fed. Exp. Corp.*, 965 F. Supp. 2d 1018, 1024 (N.D. Ind. 2013) ("This Court did not rely on any portion of these depositions objected to by McCombs in making this summary judgment determination. Thus, the motion to strike is moot and has no consequence on the outcome of this case.").

supervisor or manager at Defendant company and lacked authority to fire, promote, or discipline any other employee working at the factory. *Id.* at 6. Prior to Mendoza's complaint about Nelson's behavior on August 12, 2022, none of Defendant's employees or temporary laborers had ever reported to Defendant's management that Nelson had engaged in any harassment or discrimination toward any full-time or temporary worker at the factory. *Id.*

Mendoza alleges several instances of sexually harassing behavior by Nelson, including instances of alleged touching. *Id.* Specific allegations include that, on several occasions, Nelson would reach through the inside of her arm so as to have contact with her breasts, *id.*; on other occasions, Mendoza alleges, Nelson would stand close enough to her that she could feel his genitals and otherwise engage in sexual contact behind her back, and he further engaged in sexual overtures and "unwelcome offers." *Id.* at 7. Mendoza claims that this contact would occur almost daily. *Id.* Mendoza alleges that on August 11, 2022, Nelson touched her buttocks without her consent and/or provocation. *Id.* at 6–7.

Mendoza knew that if she had an issue at the factory, she could report it to a manager or supervisor at Defendant company, *id.* at 8, and on August 12, 2022, Mendoza made a complaint to Defendant's management that Nelson had touched her buttocks, her first complaint ever to Defendant regarding sexual harassment or discrimination. *Id.* at 7. That same day, Earnest Mustain ("Mustain"), one of the factory's managers, was assigned to investigate the alleged August 11 incident and interviewed both Mendoza and Nelson, as well as two other employees of Defendant, about the alleged incident. *Id.* at 9–10. Furthermore, Mustain immediately reassigned Mendoza to work in a part of the factory where she would not have work duties that would require her to interact with Nelson. *Id.* at 9.

Mustain informed Nelson that if any harassment by Nelson against Mendoza occurred thereafter or if Mendoza's allegation turned out to be true, Nelson could be subject to discipline, including potential termination. *Id.* at 10. In order to arrange for an interpreter, Mustain scheduled a full interview with Mendoza for Monday, August 15, 2022. *Id*. Mendoza alleges that on August 12, 2022, Nelson kept making excuses to come over and talk to her. *Id*.

On Monday, August 15, 2022, with an interpreting party present, Mendoza met with Mustain to discuss the alleged August 11 incident more fully. *Id.* at 11. During the meeting, Mendoza described her claim that Nelson touched her buttocks and alleged several other instances of sexual harassment. *Id*. She noted that other unnamed employees were made to feel uncomfortable by Nelson but did not provide their names when asked for them. *Id*. Mustain then interviewed Nelson a second time. *Id.* at 12.

On Tuesday, August 16, 2022, Mendoza worked her last shift at the factory and then voluntarily quit her assignment. *Id.* Mustain interviewed Nelson a third time on August 17, 2022, again threatening termination if Mendoza's complaint turned out to be true or if there were any future incidents. *Id.* at 13. On August 22, 2022, the Germantown Police Department visited the factory after Mendoza filed a police report. *Id.* at 14. That same day, Mustain sent an email to one of Defendant's Human Resources employees with a summary of the August 15, 2022 meeting with Mendoza. *Id.*

On August 31, 2022, Mendoza filed an administrative charge with a Wisconsin state agency alleging sexual harassment and other claims against Defendant. *Id.* The state agency ultimately found no probable cause to find employer liability related to the allegations, largely citing the nature of

Defendant's response to Mendoza's report. *Id.* at 14–15. After filing a request for review of the agency determination, Mendoza withdrew her state administrative charge. *Id.* at 15. On May 24, 2024, Plaintiffs filed the complaint in this case. *Id.*

### 2.4 Fernandez's Race Discrimination Allegations

Between May 2022 and September 2022, Fernandez was occasionally assigned to work as a machine operator assistant on the machine for which Nelson was the operator. *Id.* at 16. Fernandez also knew that if she had an issue at the factory, she could report such issue to management. *Id.* at 17. Fernandez alleges that Nelson engaged in several acts of sexual harassment against her during this timeframe, including (a) rubbing his genitals on Fernandez's buttocks on multiple occasions, (b) approaching Fernandez from behind and making contact with her waist, and (c) inquiring into Fernandez's intimate life. *Id.* at 16. Fernandez alleges that Nelson engaged in similar inappropriate contact with other Hispanic female employees, including Mendoza and others who did not report the alleged acts to Defendant's management. *Id.* Fernandez alleges Nelson acted carefully so as not to be seen by Defendant's management. *Id.* at 17.

Fernandez voluntarily quit her employment with PLM on September 2, 2022. *Id.* Fernandez did not report any of Nelson's alleged acts to Defendant's management before quitting her assignment at the factory and did not provide a reason for quitting when she told Mustain of her departure. *Id.* at 16–17. On May 24, 2024, Plaintiffs filed the complaint in this case. *Id.*

### 3. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005).

Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). But simply "denying a fact that has evidentiary support 'does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment.'" *Uncommon v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (citation and internal quotation marks omitted).

4.    **ANALYSIS**

The gist of Plaintiffs' claims are that (1) Mendoza was racially discriminated against by Nelson, and Defendant company knew or should have known of the discrimination and failed to implement an effective

remedial measure, (2) Fernandez was racially discriminated against by Nelson, and Defendant company knew or should have known of the discrimination and failed to implement an effective remedial measure, and (3) Mendoza was sexually harassed by Nelson and constructively discharged and was further retaliated against for reporting the sexual harassment. *See generally* ECF No. 1. Plaintiffs invoke 42 U.S.C. § 1981 for their race discrimination claims and Mendoza invokes 42 U.S.C. § 2000 et seq., also known as Title VII of the Civil Rights Act of 1964 ("Title VII"), for her sexual harassment and constructive discharge claims. *Id.* at 1. The Court addresses each claim in turn.

### 4.1    Mendoza's 42 U.S.C. § 1981 Race Discrimination Claim

Section 1981 "protects the right of all persons 'to make and enforce contracts' regardless of race." *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (quoting 42 U.S.C. § 1981(a)). To prevail on a § 1981 claim, the plaintiff must prove that she has been the victim of intentional discrimination. *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 669 (7th Cir. 1996) (citing *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir. 1989)). Furthermore, a plaintiff is required to establish but-for causation. *Beverly v. Abbott Lab'ys*, 107 F.4th 737, 746 (7th Cir. 2024) (citing *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022)).

Importantly, at the summary judgment stage, the plaintiff "must . . . provide a sufficient basis for a reasonable factfinder to conclude that the evidence, as a whole, indicates that the plaintiff's race 'caused the discharge or other adverse employment action.'" *Oliver v. Joint Logistics Managers, Inc.*, No. 415CV04014SLDJEH, 2017 WL 736873, at *3 (C.D. Ill. Feb. 24, 2017), *aff'd*, 893 F.3d 408 (7th Cir. 2018) (quoting *Ortiz v. Werner Enter.*, 834 F.3d 760, 765 (7th Cir. 2016)). Under this so-called "*Ortiz*" or direct approach, the

plaintiff must prove—using direct or circumstantial evidence—that the defendant was motivated by animus based upon race when taking an adverse employment action. *Sun v. Bd. of Trustees of the Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007) (addressing a Title VII claim); *see also Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 957 (7th Cir. 2024) ("We analyze § 1981 discrimination claims in the same manner as claims brought under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq." (citing *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011))). Otherwise, the plaintiff may rely on the indirect or burden-shifting framework promulgated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "which gives the plaintiff the initial burden to establish a prima facie case of discrimination, after which the burden shifts to the defendant to provide a legitimate justification, before finally shifting back to the plaintiff to establish that such justification was pretextual." *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022) (citing *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 601–02 (7th Cir. 2020)). To make a prima facie discrimination case under this approach, a plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he met h[er] employer's legitimate job expectations; (3) [s]he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Id.* (internal quotation marks and alterations omitted) (quoting *Naficy v. Ill. Dep't of Hum. Servs.*, 697 F.3d 504, 511 (7th Cir. 2012)).

Here, the undisputed facts show that Mendoza cannot make a case for racial discrimination by Nelson under either approach,[3] and on that

_____

[3]Plaintiffs do not sue Nelson individually. *See Smith v. Bray*, 681 F.3d 888, 896 n.2 ("One key difference between § 1981 and Title VII is that the latter authorizes suit only against the employer as an entity rather than against individual people who are agents of the employer. Under § 1981, individuals may

basis alone, her claim for racial discrimination must fail. Mendoza has adduced no evidence from which a jury could reasonably conclude that any of Nelson's actions were racially motivated.

There is no direct evidence of racial animus; Mendoza admits that no slurs were ever directed at her during her time working at the factory, ECF No. 23 at 12, and Mendoza does not allege any instances in which Nelson used racially-charged language (or, indeed, any racially-inflected language at all) in front of her. Instead, all that exists is the bald allegation that Nelson "targeted" Hispanic laborers, ECF No. 1 at 3, but Mendoza has failed to set forth any competent evidence at summary judgment to bear this out. "[T]he Plaintiff need not show that the complained-of conduct was explicitly racial, but must show it had a racial character or purpose." *Yancick*, 653 F.3d at 544 (citing *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011)). Forms of harassment that might seem neutral in terms of race could contribute to her claim "if other evidence supports a reasonable inference tying the harassment to the plaintiff's protected status." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) (citing *Landrau–Romero v. Banco Popular de P.R.*, 212 F.3d 607, 614 (1st Cir. 2000)). But she has provided no such evidence here.

---

be liable."). However, Plaintiffs must establish that Nelson racially discriminated against them as a predicate to establishing Defendant's liability for negligence in discovering and remedying the alleged discrimination. *Hrobowski*, 358 F.3d at 477 ("Conversely, the employer may be found liable for a hostile work environment created by an employee who was not the plaintiff's supervisor only where the plaintiff proves that the employer has 'been negligent either in discovering or remedying the harassment.'" (citing *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir.1998))).

There is also no circumstantial evidence that would support a finding of discrimination. Nearly all of the laborers supplied by PLM to the factory in 2022 were Hispanic females, and most of the workers under Nelson were Hispanic females. ECF No. 23 at 2, 6. In short, Nelson's pool of potential victims was almost all Hispanic women, making it impossible to ascertain, without more, a racial motive in his actions. *See, e.g., Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 878 (7th Cir. 1999) ("The mere fact that she is a woman is insufficient to support an inference that the action was gender-motivated." (citing *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996))); *Cole*, 838 F.3d at 896 ("[N]ot every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." (quoting *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014))).

Finally, although Plaintiffs do not expressly invoke the burden-shifting approach, even under this view, Mendoza fails under at least the fourth prong. Had Mendoza pointed to instances of Nelson treating non-Hispanic employees differently, the resolution of this motion might have been different, but Mendoza has not done so. *See Lohmeier v. Gottlieb Mem'l Hosp.*, 147 F.4th 817, 826 (7th Cir. 2025) ("Even assuming Lohmeier meets her burden on the first three prongs, she does not show the existence of similarly situated employees and accordingly cannot make out a prima facie case."). In sum, as the facts stand, there is simply no direct or circumstantial evidence of a racial motivation for Nelson's action, nor can Mendoza succeed under the burden-shifting approach.

Moreover, even if Mendoza could make a showing of race discrimination by Nelson, there exists no basis for holding *Defendant* liable. As a general matter, "an employer is not liable for coemployees' racial

harassment if the plaintiff fails to inform the employer that a problem exists," with the caveat that an employer may be liable if there exists "other evidence from which a trier of fact could conclude that [the employer] realized that this abuse had taken place." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1041–42 (7th Cir. 2023) (citing *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004) and *Durkin v. City of Chicago*, 341 F.3d 606, 612–13 (7th Cir. 2003)). Mendoza admits that she did not inform Mustain or any other manager at Defendant company that she was being discriminated against because of her race. ECF No. 23 at 13. This is fatal to her claim, especially when considered in the context of Fernandez's allegation that "Nelson acted carefully so as not to be seen by [Defendant's] management," making it less likely that Defendant's management might have otherwise found out about Nelson's alleged harassment of either Plaintiff. *Id.* at 17.

Fundamentally, Mendoza's race discrimination claim must fail for at least two reasons. First, she cannot show that *racial* harassment occurred— namely, that unwelcome conduct occurred *because* of her race. Second, she cannot show that Defendant knew or should have known about the conduct. Summary judgment is therefore appropriate as to this claim.

### 4.2 Fernandez's 42 U.S.C. § 1981 Race Discrimination Claim

Fernandez's race discrimination claim fails for the same reasons as Mendoza's. That is, Fernandez cannot show that Nelson's alleged harassment of her was due to her race, and she cannot show that Defendant should be held liable for any racial harassment.

On the first point, Fernandez admits that neither Nelson nor anyone else at the factory ever directed any racial comments or derogatory slurs regarding Hispanic persons at Fernandez. ECF No. 23 at 17. Fernandez asserts that Nelson engaged in similar inappropriate physical contact and

made similar inappropriate comments towards other Hispanic female employees. However, she provides no further evidence of this—such as testimony from these other employees—aside from her assertion that it was the case. The Court again notes a few key matters. First, even taking Fernandez's statements as true, the "mere fact" that the recipients of Nelson's unwanted contacts were Hispanic does not "support an inference that the action was [race]-motivated." *Simpson*, 196 F.3d at 878. Fernandez does not allege that the employees were treated worse than similarly-situated employees of different races; indeed, no reference is made to similarly-situated employees of other races at all. Whether under the *Ortiz* approach or the burden-shifting approach, this leaves the factfinder with no basis upon which a racial motivation could be discerned.

On the second point, Fernandez never reported any instance of alleged race discrimination or race harassment to Defendant while she was employed at the factory. Indeed, Fernandez quit without making any complaint to Defendant, providing no reason to Mustain upon her leaving. This falls squarely within the paradigm that "an employer is not liable for coemployees' racial harassment if the plaintiff fails to inform the employer that a problem exists." *Wince*, 66 F.4th at 1041 (citations omitted); *see also Hrobowski*, 358 F.3d at 478 ("Generally, the law does not consider an employer to be apprised of the harassment 'unless the employee makes a concerted effort to inform the employer that a problem exists.'" (quoting *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999))). An employer could be held liable "where the harassment was sufficiently obvious," *Hrobowski*, 358 F.3d at 478, but here, it is Fernandez herself who notes that "Nelson acted carefully so as not to be seen by [Defendant's] management." ECF No. 23 at 17.

Thus, for the same reasons discussed *supra* Section 4.2, summary judgment must be granted as to Fernandez's race discrimination claim.

### 4.3 Mendoza's Title VII Sexual Harassment, Constructive Discharge, and Retaliation Claims

#### 4.3.1 Sexual Harassment Claim

Harassment which is "sufficiently severe or pervasive to alter the conditions of . . . employment" is actionable under Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation marks and citation omitted). At the summary judgment stage, an employee alleging a hostile work environment must show that "(1) [s]he was subject to unwelcome harassment; (2) the harassment was based on h[er] [sex]; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1029 (7th Cir. 2004) (citing *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000)).

There is no doubt that the behavior Mendoza alleges is odious. However, the Court need not reach the issue of whether the harassment was severe or pervasive enough to alter the conditions of her employment via a hostile or abusive situation, because there is no basis for employer liability here.

Title VII is not a strict liability statute with respect to coworker harassment. *See Tutman v. WBBM–TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000) ("[A]n employer is not strictly liable under Title VII for sexual harassment perpetrated by its employees" (citing *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992))). Instead, when a plaintiff "claims coworkers alone were responsible for creating a hostile

work environment, [s]he must show that h[er] employer 'has been negligent either in discovering or remedying the harassment.'" *Williams*, 361 F.3d at 1029 (quoting *Mason*, 233 F.3d at 1043)). Put differently, an employer can avoid liability for coworker harassment "if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Tutman*, 209 F.3d at 1048 (citing *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 535 (7th Cir. 1993)). Relatedly, a plaintiff in a Title VII case has a duty to reasonably "avail herself of the employer's preventive or remedial apparatus," meaning that the plaintiff has "a duty 'to use such means as are reasonable under the circumstances to avoid or minimize the damages' that result from violations of the statute." *Faragher v. City of Boca Raton*, 524 U.S. 775, 806–07 (1998) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 n.15 (1982)).

Here, Mendoza alleges both that Defendant was negligent in discovering Nelson's harassing behavior and that Defendant failed to respond promptly and effectively to the harassment. ECF No. 26 at 8–9. Both arguments fail.

Mendoza's argument that Defendant unreasonably failed to learn of the harassing behavior seems to be premised on two main observations: (1) that the production floor of the factory is an open area where all sections are visible from the center, and (2) that Defendant did not train its temporary employees on its harassment-related policies. ECF No. 26 at 3, 9.

As to the first point, Plaintiffs produce no evidence that anyone in fact saw the offending behavior, leading their bare assertion of total visibility to fall flat. They also have not produced any testimony or sworn statement by the four other individuals that allegedly were harassed by Nelson, ECF No. 26 at 9, which would raise the probability that Defendant

should have discovered the harassment. Furthermore, Plaintiffs concede that Nelson acted carefully so as not to be seen by Defendant's management, lessening the likelihood that Defendant's management knew of his behavior. ECF No. 23 at 17. Similarly, Plaintiffs concede that "there are approximately fifty large machines taller than a person and storage racks which may block a person's view of parts of the production floor depending upon their location." *Id.* at 3–4. Finally, and most significantly, Plaintiffs agree that one manager would routinely walk through the factory four to five times per day, and another walked through the production area at least three times per day. *Id.* at 3. But Plaintiffs have not put forth any evidence that any of these managers indeed saw Nelson's behavior. Simply put, even accepting Plaintiffs' assertion that the factory was generally widely visible, there is simply no evidence that Defendants knew or should have known about the harassing conduct by Nelson. Taken alone, the general contours of a room hardly constitute evidence of an employer's obligations, especially when belied by a plaintiff's own admission that parts of the room were not visible and that management routinely walked the floor. *See Clacks*, 108 F.4th at 957 (holding that notice of harassment, a prerequisite for employer liability, "must be specific"). The undisputed facts do not support a finding that Defendant was negligent in discovering Nelson's offending behavior.

Moreover, the fact that Defendant did not train temporary workers on harassment policies is irrelevant where, as here, Mendoza knew that if she had an issue at the factory, she could report it to a manager or supervisor. ECF No. 23 at 8. Insofar as Title VII requires a plaintiff to reasonably "avail herself of the employer's preventive or remedial

apparatus," *Faragher*, 524 U.S. at 807, and Mendoza actually knew of her option to report, any failure to train is of no consequence in this case.

As to whether Defendant responded promptly and effectively, the Seventh Circuit has "observed that a prompt investigation is the 'hallmark of a reasonable corrective action.'" *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) (quoting *Lapka v. Chertoff*, 517 F.3d 974, 984 (7th Cir. 2008)). In assessing corrective action, the Court's "focus is not whether the perpetrators were punished by the employer, but whether the employer took reasonable steps to prevent future harm." *Id.* at 637 (citing same). "Title VII requires only that the employer take steps reasonably likely to stop the harassment." *Saxton*, 10 F.3d at 536.

Here, the steps taken by Defendant's management after Mendoza's report, "taken as a whole, show that they took the harassment seriously and took appropriate steps to bring the harassment to an end." *Porter*, 576 F.3d at 636. Mustain, one of Defendant company's managers, immediately began an investigation. He interviewed both Mendoza and Nelson the day the report was made and immediately reassigned Mendoza to work in a part of the factory where she would not have work duties that would require her to interact with Nelson. In his interview with Nelson, Mustain cautioned him that if he committed any act of harassment against Mendoza thereafter or if Mendoza's allegation turned out to be true, Nelson could be subject to discipline, including potential termination. Mustain then questioned two other employees who were working in the area at the time of the reported incident. Further, Mustain arranged for a more fulsome, interpreter-assisted interview with Mendoza to take place the business day after the report was made. That same day, Mustain interviewed Nelson a second time, informing him that further incidents would result in

termination. Mendoza resigned the next day, and Defendant's investigation processes continued shortly after her resignation. ECF No. 23 at 13–14. Plaintiffs have not raised any evidence to dispute these facts.

Plaintiffs argue that management's response was ineffective at keeping Nelson away from Mendoza. ECF No. 26 at 9–10. However, as Defendant rightly notes, "the law does not require an employer to eliminate all possible contact between employees following a report of harassment." ECF No. 22 at 27–28 (citing *Clacks*, 108 F.4th at 958). An employer may discharge its duty by "creating physical separation and minimizing time worked together." *Sutherland v. Wal-Mart Stores, Inc.*, 632 F.3d 990, 995 (7th Cir. 2011) (citing *Roby v. CWI, Inc.*, 579 F.3d 779, 786 (7th Cir. 2009)). Defendant did precisely this, assigning Mendoza to another work area and never again assigning her to work with Nelson. ECF No. 23 at 9, 13.

Most damningly to Mendoza's claim, Mendoza quit when the investigation was in its infancy. In *Cooper-Schut v. Visteon Automotive Systems*, the Seventh Circuit held that an employee plaintiff could not succeed on a constructive discharge claim insofar as the employee had quit before giving the employer a full chance to address the issues reported. 361 F.3d 421, 429 (7th Cir. 2004) ("[Plaintiff] quit before [Defendant] had a chance to complete its investigation of the caricature. Case law illustrates that an employee has not acted reasonably if she assumes the employer will fail to protect her without allowing the employer a chance to try." (citing *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996))). Here, too, the Court finds that Plaintiffs cannot show negligence in Defendant's response when Mendoza gave Defendant approximately two business days to respond to the incident, during which time Plaintiffs admit that

Case 2:24-cv-00645-JPS    Filed 11/25/25    Page 18 of 24    Document 30

Defendant's management took a range of steps to respond to the alleged harassment and proactively prevent further instances of it.

Taken as a whole, Mendoza's Title VII sexual harassment claim fails because no basis for employer liability exists. Taking the facts in the light most favorable to Plaintiffs—but nonetheless incorporating those facts which Plaintiffs do not dispute—there is simply no basis upon which a reasonable jury could find Defendant liable. Summary judgment for Defendant is therefore appropriate as to this claim.

### 4.3.2   Constructive Discharge

In *Grube v. Lau Indus., Inc.*, the Seventh Circuit laid out the standards for assessing a constructive discharge claim such as Mendoza's:

> [a]n employee can assert a claim of constructive discharge when she is forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable. . . . Absent extraordinary conditions, a complaining employee is expected to remain on the job while seeking redress. . . . As courts have noted, an employee who quits without giving h[er] employer a reasonable chance to work out a problem has not been constructively discharged.

257 F.3d 723, 728 (7th Cir. 2001) (internal citations and quotation marks omitted).

This standard dooms Mendoza's constructive discharge claim. Mendoza reported the harassing behavior on a Friday and quit the following Tuesday. She did not allow Defendant time to undertake its investigation in earnest, much less complete it.

Defendant's analogy to *Cooper-Schut* is apt here. ECF No. 22 at 8 (citing 361 F.3d at 425, 429). In that case, the plaintiff showed the defendant company's management an offensive caricature found posted on the company refrigerator—a caricature that clearly related to the plaintiff's race

and sex. *Cooper-Schut*, 361 F.3d at 428. In response, management interviewed the plaintiff and began a complete investigation the following day. *Id*. The defendant company did not discipline any employees, but did review its zero-tolerance policy concerning racial and sexual harassment with all employees at the plant. *Id*. However, plaintiff quit before the defendant "had a chance to complete its investigation of the caricature." *Id.* at 429. The court found that she failed to act reasonably insofar as she "assume[d] the employer [would] fail to protect her without allowing the employer a chance to try." *Id*. The present case is directly analogous. Mendoza quit before Defendant completed its investigation, despite Defendant ostensibly taking steps towards resolving the matter.

The fact that Nelson had a few instances of contact with Mendoza in the intervening period is of no consequence and, indeed, cuts the other way. ECF No. 23 at 10. It demonstrates that Mendoza's situation did not rise to the level of unbearability that would lead a reasonably person to believe they needed to quit. First, as noted *supra* Section 4.3.1, "the law does not require an employer to eliminate all possible contact between employees following a report of harassment." *Clacks*, 108 F.4th at 958. An employer may discharge its duty by "creating physical separation and minimizing time worked together." *Sutherland*, 632 F.3d at 995. Defendant did precisely this, assigning Mendoza to another work area and never again assigning her to work with Nelson. This hardly rises to the level of "extraordinary circumstances," *Grube*, 257 F.3d at 728, and as such, Mendoza was required to remain on the job while seeking redress in order to demonstrate constructive discharge. *See Roby*, 579 F.3d at 785–86 (finding no constructive discharge even where plaintiff was required to keep working in "close proximity" with the alleged offender, because plaintiff "essentially just quit

coming to work while CWI was attempting to resolve the issue with [the alleged offender]").

Second, and more significantly, Nelson's specific behavior belies any possible claim by Mendoza of intolerable or especially egregious working conditions. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007) (holding that, to establish a constructive discharge claim, a plaintiff must show working conditions "even more egregious than the high standard for hostile work environment claims" (citing *Tutman*, 209 F.3d at 1050)). Following Mendoza's complaint, Nelson never made physical contact with Mendoza again, and even in the times that he did try to talk to her on August 12, 2022, he did not make any sexual comments. There is no evidence whatsoever "of the types of threats to [Mendoza] or her employment that would lead a reasonable person to believe that she needed to quit her job to protect herself." *Roby*, 579 F.3d at 785 (citations omitted) ("At best, [Plaintiff] can merely point to her own testimony that [the alleged offender] would stare and glare at her and her subjective belief that he wanted 'to get her' . . . ."); *cf. Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1191, 1198–99 (7th Cir. 1992) (finding constructive discharge where supervisor brandished a firearm and held it to the plaintiff's head).

Put simply, there are no facts from which a reasonable jury could conclude that Mendoza was constructively discharged, both because the situation after reporting the offending behavior was not sufficiently unbearable and because she failed to remain on the job long enough to give Defendant a chance to investigate and fully address the wrongdoing. Summary judgment for Defendant is therefore appropriate as to this claim.

### 4.3.3 Retaliation

"In addition to direct discrimination, Title VII proscribes discriminating against an employee 'because [s]he has opposed any practice made an unlawful employment practice by [Title VII].'" *Baird v. Iris USA, Inc.*, No. 18-CV-894-PP, 2020 WL 5748891, at *10 (E.D. Wis. Sept. 25, 2020) (quoting 42 U.S.C. § 2000e-3(a)). In order to withstand summary judgment, a plaintiff proceeding with a Title VII retaliation claim under the direct method (as seems to be the case here) "must produce evidence from which a reasonable juror could find that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two." *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023) (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018)). Plaintiffs cite both the alleged failings in Defendant's investigation and Nelson's post-reporting contact with Mendoza as retaliatory actions. For the same reasons discussed in the previous sections, Mendoza's retaliation claim must also be dismissed.

First, following her report of harassment, Defendant's management immediately separated Nelson from Mendoza, assigning Mendoza to another part of the factory. Indeed, Mendoza was never assigned to work with Nelson again. Mendoza did not sustain a demotion or pay cut, and her hours and type of work remained the same. ECF No. 23 at 2, 13. As discussed *supra* Section 4.3.2, there was no constructive discharge. Indeed, all of the evidence on the record suggests an employer that took the allegations seriously and was taking steps reasonably calculated to prevent further offending behavior. Thus, Mendoza cannot show any adverse employment action by Defendant. *See Porter*, 576 F.3d at 641 (granting summary judgment as to plaintiff's retaliation claim where there was "no

showing that [the defendant] ignored or slowed its investigation after the initial complaint in the hope that the continued harassment would cause [the plaintiff] to leave. The record shows that [the defendant] took appropriate action to address [the plaintiff's] complaint. There is no evidence in the record that it failed to take [the plaintiff's] complaint seriously.").

Second, Nelson's few instances of post-reporting contact with Mendoza hardly carried any overtly threatening or sexual valence, nor did they lead to any tangibly negative outcome. There is evidence that Nelson sought to apologize to Mendoza, ECF No. 23 at 8; this may seem to imply that Nelson wished to speak with Mendoza *because* of her reporting. However, the record is absolutely devoid of any evidence suggesting Nelson threatened, harassed, or otherwise sought to retaliate against Mendoza. All that exists is evidence that Nelson spoke to her. And again, as noted *supra* Section 4.3.2, an employer is not required to prevent all possible contact between employees following a harassment report. In many cases, creating physical separation and minimizing time worked together is sufficient. *Sutherland*, 632 F.3d at 995.

Based on the record now before the Court, no reasonable jury could conclude that Mendoza was retaliated against by Defendant based on any protected activity. Summary judgment for Defendant is therefore appropriate as to this claim.

**5.    CONCLUSION**

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment on each of Plaintiffs' claims, and this case will be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendant Corporate Graphics Commercial, Inc.'s motion for summary judgment, ECF No. 21, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs Samantha Mendoza Ruiz and Karen Fernandez's motion to strike, ECF No. 28, be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of November, 2025.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge